

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2006

# Colussi v. Woodruff Family Ser

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4595

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Colussi v. Woodruff Family Ser" (2006). *2006 Decisions.* Paper 1464.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1464

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4595
_____

LORI A. COLUSSI;
DENA M. FERCZAK,

Appellants

v.

WOODRUFF FAMILY SERVICES, LLP
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 01-cv-01898)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Argued February 13, 2006
Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed: March 9, 2006)

Samuel J. Cordes (Argued)
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA  15222
        *Attorney for Appellants*

Phillip J. Binotto, Jr. (Argued)
Eckert, Seamans, Cherin & Mellott
1001 Corporate Drive, Suite 200
Canonsburg, PA  15317
        *Attorney for Appellee*

OPINION OF THE COURT

FISHER, *Circuit Judge*.

The only two female funeral directors employed by Woodruff Family Services, LLP, were terminated as part of a reduction in workforce on December 11, 2000. They were selected for termination, according to the company, based on seniority and performance: Dena M. Ferczak was believed to be the least senior employee and Lori A. Colussi was regarded as the "worst performer."

The two women allege that these reasons were mere pretext for gender discrimination. They assert, contrary to the company's representations, that Ferczak was not the least senior employee and that many of the complaints against Colussi were attributable to the actions of company officials. The District Court discounted these contentions, and granted summary judgment in favor of Woodruff. Ferczak and Colussi now appeal.

I.

A.

Woodruff, a partnership formed in 1999, operated eight funeral homes and employed thirteen funeral directors. The directors were responsible for coordinating all aspects of the funeral process, from preparing the body to scheduling events with the

cemetery and churches. Only two of the funeral directors at Woodruff, Ferczak and Colussi, were women. (A. 133-34, 137-39, 145, 187.)

Ferczak began working at a Woodruff funeral home in or around September 1998. She started as a part-time "support staff person," assisting funeral directors in preparing for services. After graduating from mortuary school, she commenced an internship at the funeral home on September 27, 1999. She became a full-time funeral director for Woodruff at the conclusion of her internship. (A. 191-95, 223-24, 232, 523-31, 594.)

Ferczak performed well in her position. She completed the duties assigned to her and was not the subject of any complaints. On occasion, however, one of the partners, William Bogan, would criticize her performance of a particular task by stating: "oh, women." He made this type of remark approximately twice per week. At one point, he told Ferczak that he "would never ever hire another woman again [because] two is too many." (A. 165-66, 202-12.)

Colussi began working at one of the Woodruff funeral homes on June 1, 1995. She started as an intern and, after receiving her license, became a funeral director in 1996. She was later appointed manager of another funeral home, operated by Bogan. (A. 313-20, 594.)

Colussi's performance was unimpressive. She did not spend adequate time supervising employees at the funeral home, preferring instead to work at a different Woodruff facility closer to her home, and she failed to update sales information despite requests from Bogan. Several clients whose funeral services had been handled by Colussi

3

submitted complaints evaluating her performance as "poor." Similar problems occurred in services for other families. (A. 78-87, 170-71, 339-40, 356-58, 649, 654-58, 660-61.)

B.

In late 2000, Woodruff was notified by its financial advisors that the company would need to balance its budget in order to secure additional funding. The partners decided, during meetings in December 2000, to lay off certain personnel. They decided that employees would be selected for termination based on two criteria: seniority as an employee of Woodruff or one of its funeral homes (not seniority as a funeral director) and performance on the job. All of those present at the meeting reported that the gender of employees was not discussed. (A. 34-36, 43-46, 48, 430-44, 518-21, 594-95, 620-23, 626-628, 647-51.)

One or more of the partners moved to lay off Ferczak, Colussi, and Richard Platt, who had worked for Woodruff or associated funeral homes since October 1997. The partners regarded Platt and Colussi as the poorest performers on the staff. They also believed, according to their own accounts, that Ferczak had the least seniority of the funeral directors. (A. 192, 594.)

All four partners voted to terminate Platt, and three partners, with one abstaining, voted to terminate Colussi. Bogan voted to retain Ferczak, but the other three voted in favor of termination. No other funeral directors were proposed for termination. (A. 34-36, 43-46, 48, 594-95, 620-23.)

4

The employees were notified of their termination on December 11, 2000. Each was informed – during separate, private meetings with two of the partners – that the lay off was necessitated by the financial condition of the company. Each was also offered a job in sales at Woodruff Funding Services, a company closely related to Woodruff, in a non-salaried position in which compensation would be based on commissions. Platt accepted; Ferczak and Colussi declined. The ten other funeral directors, all male, were retained. (A. 56-60, 67-70, 161-62, 167-69, 273-74, 646.)

## C.

In October 2001, Ferczak and Colussi filed a complaint against Woodruff in the District Court for the Western District of Pennsylvania. They alleged that Woodruff had terminated them based on gender and sought relief under Title VII of the Civil Rights Act. (A. 5-17.)

Soon after the complaint was filed, Woodruff offered to rehire Ferczak. She accepted and commenced employment in her previous position, as a funeral director, on February 7, 2002. (A. 189.)

The case proceeded to discovery. Ferczak stated in her deposition that she had been hired as a funeral director in September 1999 but that she had worked part-time at a Woodruff funeral home for "approximately a year previous to that." Colussi admitted that she could not recall any particular instances of discriminatory comments or actions by Woodruff managers, but reiterated her belief that the company's justification for her termination – performance – was pretextual. She stated that many of the complaints

against her reflected simple misunderstandings and that some were attributable to mistakes made by Bogan. She said that she was, overall, a good employee. (A. 192, 202, 206, 327-39, 352-53, 381-82.)

The partners confirmed in depositions that their decision to terminate Ferczak and Colussi had been based on, respectively, seniority and performance. They reaffirmed that "seniority" in this sense referred to the time in which an individual had been employed by a Woodruff funeral home in any capacity, whether as a funeral director or as support staff and whether full-time or part-time. One of the partners noted in this regard that another funeral director, Aaron Enoch, had entered an internship program with Woodruff in 1999 and had become a director in 2001, but that his date of hire for seniority purposes was April 18, 1998, when he had started working for one of the Woodruff funeral homes in a part-time support position. (A. 28, 44-46, 55, 72, 434-44, 464-65, 518-21, 594-95, 620-23, 626-628, 647-51.)

At the conclusion of discovery, in July 2002, Woodruff filed a motion for summary judgment. The company argued that Ferczak and Colussi could not prove that the partners' explanations for the terminations – performance and seniority – were mere pretext for discriminatory intent. The District Court granted the motion. It determined, based on Ferczak's admissions during depositions, that she "had the least seniority of the funeral directors." It also noted that the "record is replete with instances of Colussi's unsatisfactory job performance." (Dist. Ct. Op. at 11-19.)

6

This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the order of the District Court. *See*, *e.g.*, *Hill v. City of Scranton*, 411 F.3d 118, 124 (3d Cir. 2005).

II.

Claims of gender discrimination proceed under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden initially rests on the plaintiff to show that she was terminated from a position for which she was qualified while other, male employees were retained. The employer must then offer a "legitimate, nondiscriminatory reason" for the termination. The burden then shifts back to the plaintiff to point to evidence either that the articulated reason should be disbelieved or that gender bias was "more likely than not a motivating or determinative cause" of the decision. *Fuentes v. Perskie*, 32 F.3d 759, 763-65 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *McDonnell Douglas*, 411 U.S. at 802); *see also Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000); *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234-35 (3d Cir. 1999).

It is not disputed, for purposes of this appeal, that Ferczak and Colussi satisfied their initial burden and that the reasons given by Woodruff for its decision to terminate the two women – performance and seniority – are legitimate and nondiscriminatory. The sole question is whether the evidence could support a finding that these reasons are pretextual.

To establish pretext, Ferczak and Colussi must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Woodruff's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). We conclude that the evidence of record could support a finding of pretext as to Ferczak, but not as to Colussi.

A.

The partners, according to their own accounts, relied upon seniority for their decision to fire Ferczak. They judged seniority by the amount of time that an individual had been employed by Woodruff or one of its funeral homes, whether in a part-time or full-time capacity and without regard to the date on which the individual became a licensed funeral director. They stated that Ferczak had been hired in September 1999 and that she was the least senior employee.

This was clearly incorrect, considering the evidence in the light most favorable to Ferczak.[1] Ferczak testified that, although she had commenced her internship with Woodruff in September 1999, she "had worked there part-time for approximately a year previous to that." (A. 192.) Notwithstanding the lack of payment records or other corroborating documentation, and in the absence of countervailing evidence, we are

---

[1]*See*, *e.g.*, *Slagle v. County of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) ("In reviewing the grant of summary judgment, we must view 'the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.'") (quoting *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004)).

obliged to accept this assertion as true for purposes of summary judgment. Ferczak's date of hire was thus September 1998.

Another funeral director, David Good, started at a later date. Good was hired as a full-time funeral director in March 1999, before Ferczak had become a licensed funeral director but after she had commenced part-time employment with Woodruff. (A. 192, 594.) Although Good had more seniority as a funeral director, Ferczak had more seniority as an employee of a Woodruff funeral home. Under the partners' professed rationale, Good should have been terminated rather than Ferczak.

Nothing in the record suggests that the partners were simply mistaken as to Ferczak's start date, based on a good-faith misunderstanding of her employment history.[2] They do not claim that they conducted a review of her employment record, that they lacked the means to conduct such an analysis, or that they relied upon documents or verbal assertions of her start date in making their decision. They do not argue that they used a different definition of seniority during their meetings, and they admit that they

---

[2]*See*, *e.g.*, *Fuentes*, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken[, but] . . . must demonstrate such weaknesses . . . in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally . . . infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'") (quoting *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)); *see also Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 404 (5th Cir. 2001) (same); *Dionne v. Shalala*, 209 F.3d 705, 709 (8th Cir. 2000) (same); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (same); *Watson v. Se. Pa. Transp. Auth.*, 207 F.3d 207, 222 (3d Cir. 2000) (same).

calculated the seniority of other employees, such as Enoch, from their date of hire with Woodruff.

Instead, the partners continue to assert, based on perceived "admissions" by Ferczak in her prior testimony and submissions, that she was the least senior employee. In short, they categorically deny that any mistake occurred.

This casts doubt on the credibility of the partners' explanation. The record, viewed in the light most favorable to Ferczak, demonstrates that she was not the least senior employee. Her previous "admissions" in this case, in which Ferczak stated that she had been hired in September 1999, arguably refer to her date of hire as a full-time funeral director, and do not prevent Ferczak from claiming that she had been hired as a part-time support staff member in September 1998. The partners' refusal to countenance even the possibility of a mistake, or to give any explanation of their apparent miscalculation of Ferczak's start date, could support an inference that their proffered justification for her termination is merely a post hoc rationalization.[3]

A rational factfinder could conclude, based on this evidence, that the reason offered by Woodruff for terminating Ferczak was merely pretextual. The District Court erred in granting summary judgment in favor of Woodruff on this claim.

---

[3]*See*, *e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."); *see also Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 284-85 (3d Cir. 2001).

10

B.

The same cannot be said with respect to Colussi. Unlike Ferczak, Colussi was terminated based on poor performance. Several partners expressed concerns over her motivation and diligence in completing tasks, and the company had received numerous complaints about her work. She was viewed by officials of Woodruff as one of the "worst performer[s]" at the company.

Nothing in the record substantially undercuts these assertions. The partners consistently testified in their depositions that Colussi had failed on many occasions to satisfy professional expectations, resulting in complaints and requiring management intervention. Colussi argues that many of these problems were attributable to inconsistent instructions from Bogan and other partners at Woodruff, but she does not dispute that most of these incidents did, in fact, occur and resulted in admonishments or reprimands by company officials. Notwithstanding Colussi's insistence that she was a satisfactory employee, the record amply demonstrates that the partners viewed her performance as substandard.[4]

Nor is there sufficient evidence to show that gender discrimination was a "motivating factor" in the decision to terminate Colussi. She was not subject to other

---

[4]*See*, *e.g.*, *Watson*, 207 F.3d at 222 (noting that employee's disagreement with employer's assessment of performance does not, without more, demonstrate a triable issue of fact); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331-32 (3d Cir. 1995) (same); *Ezold*, 983 F.2d at 529-31 (same); *see also Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."), *overruled on other grounds by Hicks*, 509 U.S. 502.

forms of discrimination while employed by Woodruff, and, unlike Ferczak, she was not exposed to gender-biased comments. There is no basis on which a rational trier of fact could conclude that Colussi's termination was motivated by something other than her poor performance.

The record does not support a finding of pretext or discriminatory motive with respect to the decision to terminate Colussi. The District Court properly granted summary judgment in favor of Woodruff on her claim.

III.

An employer's reason for an adverse employment action may be found to be pretextual only if the employee demonstrates such weaknesses or inconsistencies in the rationale as to render it "unworthy of credence." *Fuentes*, 32 F.3d at 765 (quoting *Ezold*, 983 F.2d at 531). Ferczak has made this showing as to the reason offered by Woodruff for her termination; Colussi has not.

Accordingly, we will reverse the entry of summary judgment against Ferczak and affirm the entry of summary judgment against Colussi. This case will be remanded to the District Court for further proceedings consistent with this opinion.